IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AKIO MONTRAIL SMITH, | § | |
|     Petitioner, | § | |
| | § | No. 3:05-CV-2125-P |
| v. | § | ECF |
| | § | |
| NATHANIEL QUARTERMAN, Director, | § | |
| TDCJ-CID, | § | |
|     Respondent. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and a standing order of reference from the district court. The Findings, Conclusions and Recommendation of the Magistrate Judge are as follows:

**I. Background**

On August 22, 2003, Petitioner was convicted of first degree murder. *State of Texas v. Akio Montrail Smith*, F-0175868-LU (291st Dist. Ct., Dallas County, Tex., Aug. 22, 2003). Petitioner was sentenced to forty-eight years confinement. On April 20, 2004, the Fifth District Court of Appeals affirmed the conviction. *Smith v. State*, No. 05-03-01292-CR (Tex. App.– Dallas, 2004). Petitioner did not file a petition for discretionary review.

On January 20, 2005, Petitioner filed a state petition for writ of habeas corpus. *Ex parte Smith*, Application No. 62,309-01. On August 17, 2005, the Court of Criminal Appeals denied the petition without written order on the findings of the trial court. *Id*. at cover.

On October 4, 2005, Petitioner filed this federal petition. Petitioner argues he received

ineffective assistance of counsel when counsel:

    (1) failed to question witnesses before trial;

    (2) failed to investigate:

        (a)    evidence seized by police officers;

        (b)    evidence regarding the scene of the incident;

        (c)    the victim's reputation for violence and his criminal, psychological, and gang history;

        (d)    witnesses' criminal history;

    (3) failed to prepare and present a coherent self-defense argument;

    (4) failed to present all available evidence regarding self-defense to the jury; and

    (5) failed to seek suppression of state witnesses' testimony.

## II.  Discussion

**1.**    **Factual Background**

The following statement is taken from the court of appeals decision:

> The record contains evidence that, on the evening of October 19, 2001, [Corey] Jones and Beverly Shinn drove to an apartment building in Dallas. Jones walked up to a third floor apartment to discuss selling a stereo to Devan Lawrence, who was among those in the apartment. [Petitioner] arrived thereafter. Shortly after [Petitioner] arrived, Jones went downstairs to get into the car and leave. Lawrence testified that [Petitioner] followed Jones and "had words" with Shinn, who was sitting in the passenger seat. Lawrence observed [Petitioner] reach into the car and remove the keys from the ignition. Then Jones got out of the car, and Jones and [Petitioner] "had words." [Petitioner] asked Lawrence to hold his gun, but Lawrence refused. Jones and [Petitioner] walked up the steps and stood on the balcony in front of the apartment, arguing about the keys. According to Lawrence, Jones was trying to get the keys and was about to leave. [Petitioner] and Jones moved into the apartment, still arguing and "tussling," that is, Jones was trying to get the keys from [Petitioner's] pocket, but Lawrence told them to leave. According to Lawrence, Jones did not have a gun, and [Petitioner] and Jones were not punching or swinging at each other. Lawrence heard Jones say something to [Petitioner], although Lawrence did not hear what Jones said. Then [Petitioner] said to

Jones, "You threatening me?" and immediately pulled out a "metallic silver, grayish color" nine millimeter automatic handgun and shot Jones. Jones grabbed Lawrence, and Lawrence pulled him into the apartment and closed the door because [Petitioner] was still "aiming the gun" at the apartment. Jones later died from a single gunshot wound. After the shooting, [Petitioner] left the scene.

Kenley Holloman, a friend of [Petitioner's], testified that [Petitioner] had been with Holloman at Holloman's house earlier that day, and Holloman had seen [Petitioner] with a chrome gun which Holloman thought was a nine millimeter. Holloman testified that, after the incident, [Petitioner] told Holloman that [Petitioner] and Jones had "got into it over some car keys."

Beverly Shinn testified she and Jones were about to leave the apartment building parking lot, when [Petitioner] came down from the apartment and started beating on the front passenger window. [Petitioner] looked "crazy" to Shinn. Shinn told Jones to leave, but Jones got out of the car to talk to [Petitioner]. Then [Petitioner] went to the driver's side, jumped into the seat, tried to drive away, and grabbed the key when the car would not move. According to Shinn, [Petitioner] and Jones began arguing, but were not "punching each other." [Petitioner] yelled to a man on the balcony to come and get his gun. Shinn heard them arguing while they were going up the stairs, and then she heard a gunshot. According to Shinn, Jones did not own a gun, and did not have either a gun or a knife on the night of the incident.

Kevin Brown was also in the apartment. He testified that [Petitioner] went down to Jones's car and argued with Shinn. Brown also observed [Petitioner] and Jones arguing. According to Brown, [Petitioner] asked Lawrence to hold his gun, and Lawrence refused. Jones and [Petitioner] continued to argue as they walked up the stairs to the apartment. Jones tried to get his key from [Petitioner], who pushed Jones away. Brown and Lawrence tried to break up the verbal argument and the "tussling" over the keys. According to Brown, [Petitioner] and Jones were on the balcony when [Petitioner] was saying he was "going to knock him (i.e., Jones) out." Then Jones said, "If you put your hands on me, then I'm going to kill you." Brown heard [Petitioner] say "You threatening me?" and then saw [Petitioner] pull out a grey nine millimeter handgun and shoot Jones. Brown never saw Jones with a gun or knife, and he did not see Jones swinging at [Petitioner].

[Petitioner] testified that, on the night of the incident, he went to the apartment to buy drugs, but he did not see Shinn, did not go downstairs until after he shot Jones, and did not have a gun. [Petitioner] testified that he owned a .45 caliber handgun, but did not own a nine millimeter handgun. According to [Petitioner] he and Jones were arguing over Jones's speaking of [Petitioner's] cousin who was in jail after shooting and killing Jones's mother, an event that had happened ten or eleven years previously, when [Petitioner] was a little boy, and had never previously been mentioned between [Petitioner] and Jones. [Petitioner] testified that Jones said to him, "On my mama, I'm

>   fixing to kill you just like your cousin killed my mama." [Petitioner] asked Jones if Jones was threatening him. Then, according to [Petitioner], Jones reached down his pants for a chrome or black gun, "fumbling, just like he was drunk," but Jones''s gun caught on a belt loop. According to [Petitioner], Brown was standing next to [Petitioner], holding a nine millimeter. [Petitioner] reached to the side, grabbed the gun from Brown and, without aiming, shot towards Jones. [Petitioner] testified that Jones dropped his gun.
>
>   A police officer testified that he found a cartridge casing from a nine millimeter semi-automatic handgun on the ground under the stairwell leading to the apartment. No guns were recovered from the scene.

*Smith v. State*, No. 05-03-01292-CR, slip op. at 2-3.

**2.      Standard of Review**

The pertinent terms AEDPA state:

>   (d)   An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>       (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>       (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in a State court proceeding.

28 U.S.C. § 2254(d). Under the "contrary to" clause, a federal habeas court may grant the writ of habeas corpus if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently from the United States Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 380-84 (2000). Under the "unreasonable application" clause, a federal court may grant a writ of habeas corpus if the state court identifies the correct governing legal principle from the United States Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Id.*

**Findings, Conclusions and Recommendation**
**of the United States Magistrate Judge**          Page -4-

This amendment applies to all federal habeas corpus petitions which are adjudicated on the merits in state court after April 24, 1996. *See Lindh*, 521 U.S. at 336. The petition in this case is subject to review under the AEDPA.

**3.     Ineffective Assistance of Counsel**

Petitioner claims his counsel was ineffective because she: (1) failed to investigate; (2) failed to prepare and present a coherent self-defense argument; (3) failed to present all available evidence to support self-defense; (4) failed to question witnesses before trial; and (5) failed to seek suppression of witness testimony before trial.

To sustain a claim of ineffective assistance of counsel, Petitioner must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense so gravely as to deprive Petitioner of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Courts, therefore, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*.

Even if counsel is proven deficient, a petitioner must prove prejudice. To prove such prejudice, Petitioner must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 694). "[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong." *Id*. "Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Id*. (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

### (a) Failure to Question Witnesses

Petitioner argues his counsel failed to question witnesses prior to trial concerning issues meaningful to his defense. On state habeas review, Petitioner's counsel filed an affidavit stating that she interviewed two of the state's witnesses, Beverly Shinn and Kenley Holloman, prior to trial. *Ex parte Smith*, No. 62,309-01 at 44-45. Petitioner's counsel also stated that two of the state's other witnesses, Devon Lawrence and Kevin Brown, were not willing to speak to her or her investigator prior to trial. *Id.* Petitioner does not state which witnesses his counsel failed to interview or what specific questions or information counsel should have obtained from any witnesses. Petitioner's conclusory allegations are insufficient to warrant habeas relief. *See Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985) (stating "for the appellant to demonstrate the requisite *Strickland* prejudice, the appellant must show not only that this testimony would have been favorable, but also that the witness would have testified at trial."); *see also Martin v. McCotter*, 796 F.2d 813, 819 (5th Cir. 1986) (finding "hypothetical or theoretical testimony will not justify the issuance of a writ . . . ."). Petitioner's claim should be denied.

### (b) Failure to Investigate and Present Evidence

Petitioner raises numerous claims alleging that his counsel failed to properly investigate the case and failed to present all available evidence to the jury.

#### (i) Gun Evidence

Petitioner alleges his counsel failed to investigate a gun that was discovered in a different apartment four days after the incident, but was not allowed to be mentioned during the trial. The record shows, however, that defense counsel raised the gun issue before trial and

attempted to have evidence regarding the gun admitted. (Trial Tr. Vol. 3 at 10-12). Petitioner's ineffective assistance claim regarding the gun evidence is without merit and should be denied.

### (ii) Apartment Evidence

Petitioner argues his counsel failed to investigate Petitioner's claims that the apartment were the incident occurred was a drug house. Petitioner argues this evidence would have discredited the state's witnesses who testified that no drugs were sold from the apartment. He also states the evidence would support his claim of self-defense since drug houses are known to contain guns.

On state habeas review, defense counsel submitted an affidavit stating that many of the state's witnesses testified that they used drugs in the apartment on the day of the incident. *Ex parte Smith*, No. 62,309-01 at 44-45. Some of the state's witnesses also admitted to removing drugs from the apartment after the shooting, but prior to the arrival of the police. (*Id*). Although Petitioner argues that counsel should have questioned the apartment manager and the police to determine if the apartment was a drug house, Petitioner has failed to show that either the apartment manager or the police would have testified that the apartment was a drug house. *See Martin*, 796 F.2d at 819 (finding "hypothetical or theoretical testimony will not justify the issuance of a writ . . . ."). Petitioner's claim should be denied.

### (iii) Victim's History

Petitioner argues his counsel failed to investigate the victim's criminal history, psychological history, gang affiliation, and reputation for being violent. He contends his counsel should have obtained the victim's past jail records, parole or probation records, school records and any arrest records. Petitioner, however, has failed to show that such an investigation would

**Findings, Conclusions and Recommendation**
**of the United States Magistrate Judge**          Page -7-

have revealed information favorable to the defense. Petitioner's claims are conclusory and should be denied.

### (iv) Witnesses' History

Petitioner argues his counsel failed to investigate the criminal histories of the state's witnesses. At trial, state's witness Devan Lawrence testified that he was on probation for aggravated assault. (Trial Tr. Vol. 3 at 80). He also testified that he was previously convicted in 1992 for theft and unauthorized use of a motor vehicle. (*Id*.). State's witness Beverly Shinn testified that she was currently incarcerated for burglary of a habitation. (*Id*. at 115). She also testified that she was convicted of forgery in 1994, theft in 1998, possession of a controlled substance and theft in 2000, and fraud and theft in 2002. (*Id*. at 115-16). State's witness Kevin Brown testified that at the time of the incident, he had been in the apartment smoking marijuana. (*Id*. at 161). He testified that before the police arrived, he left the apartment with a box of marijuana. (*Id*.). He also testified that he was convicted of theft, unauthorized use of a motor vehicle and burglary of a habitation in 1996 and was convicted of possession of a controlled substance in 2001. (*Id*.). Petitioner has not shown that a further investigation would have revealed any additional offenses. Petitioner's claim is conclusory and should be denied.

### (c) Coherent Defense

Petitioner argues his counsel failed to present a coherent self-defense argument. At trial, Petitioner testified that the victim threatened him by saying: "If you put your hands on me, I'll kill you." (Trial Tr. Vol. 4 at 58-59). Petitioner also testified that the victim stated: "On my mama I'm going to kill you just like your cousin killed my mama." (*Id*. at 51). Petitioner testified that he saw the victim reach for a gun, pull out a gun, drop the gun after he was shot and

then try to reach for the gun again. (*Id.* at 51-53, 61).

Defense counsel argued that Petitioner's testimony was corroborated by Kevin Brown. Brown testified that he heard the victim say to Petitioner, "If you put your hands on me I'll kill you." (Trial Tr. Vol. 4 at 127-28). Defense counsel attempted to discredit other testimony from state's witnesses by pointing out their criminal histories and by arguing that they had tampered with the crime scene. (*Id*. at 128-29). Petitioner's conclusory allegations fail to show his counsel was ineffective.

### (d) Failed to Suppress Testimony

Petitioner argues his counsel failed to seek pre-trial suppression of the state's witnesses' testimony. It appears Petitioner is arguing that the state's witnesses lacked credibility because they conspired to remove evidence from the crime scene and conspired to defeat his self-defense claim. Petitioner has stated no basis for suppressing these witnesses' testimony. Petitioner's counsel was not required to file frivolous motions or objections. *See United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995). Petitioner's claim should be denied.

**4.    Summary**

Petitioner is lawfully restrained because he has failed to prove that he has been denied a constitutionally protected interest. Accordingly, the state courts' decision to deny relief is not contrary to or does not involve an unreasonable application of clearly established federal law and is not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

**RECOMMENDATION**

This Court recommends that the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 be DENIED.

Signed this 19th day of December, 2006.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO OBJECT

The United States District Clerk shall serve a copy of these findings and recommendations on the parties. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings and recommendations must file and serve written objections within ten (10) days after being served with a copy. A party filing objections must specifically identify those findings and recommendations to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. The failure to file such written objections to these proposed findings and recommendations shall bar that party from a *de novo* determination by the district court. *See Thomas v. Arn*, 474 U.S. 140 (1985). Additionally, the failure to file written objections to proposed findings and recommendations within ten (10) days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).